12/27/2016 12:16:09 PM
Chris Daniel - District Clerk Harris County
Envelope No. 14452693
By: Nelson Cuero
Filed: 12/27/2016 12:16:09 PM

# 2016-87946 / Court: 165

NO. _____

| | | |
|---|---|---|
| **MATIN FATERY** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| **v.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| **VOLKSWAGEN AG,** | § | |
| **VOLKSWAGEN GROUP OF** | § | |
| **AMERICA, INC., AND DUCATI** | § | |
| **NORTH AMERICA, INC.** | § | |
| *Defendants*. | § | **HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES**, MATIN FATERY, hereinafter called Plaintiff, complaining of and about VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC. AND DUCATI NORTH AMERICA, INC., hereinafter called Defendants, and for cause of action show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff affirmatively pleads that he seeks monetary relief of more than $1,000,000.00 but no more than the jurisdictional limits of this Court, including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees and intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.      Plaintiff, MATIN FATERY, is an individual who resides in Harris County, Texas. The last three digits of his Texas Driver's License number are 060.

3.      Defendant, VOLKSWAGEN GROUP OF AMERICA, INC. ("Volkswagen Group") is a nonresident corporation. It may be served with citation pursuant to sections 5.201 and

1

5.255 of the Texas Business Organizations Code by and through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Services, at 211 E. 7th Street, Suite 620, Austin, Texas 78701. Service of said Defendant as described herein may be effected by certified mail, return receipt requested.

4.     Defendant, VOLKSWAGEN AG, has its principal place of business in Wolfsburg, Germany. Volkswagen AG is a corporation organized under the laws of Germany and is the parent corporation of Volkswagen Group of America, Inc.

5.     Defendant, DUCATI OF NORTH AMERICA ("Ducati") is a nonresident corporation. It may be served with citation by and through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Service of said Defendant as described herein may be effected by certified mail, return receipt requested.

## MISNOMER/ALTER EGO

6.     In the event any parties are misnamed or are not included herein, it is Plaintiffs' contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## AGENCY

7.     Volkswagen Group of America, Inc. and Volkswagen AG were and are at all times relevant to the allegations in this complaint working in concert under the common objective to engage in the emissions scheme described in this complaint. Volkswagen Group of America, Inc. and Volkswagen AG were and are the agents of each other and have acted and act for their common goals and profit. Therefore, all acts and knowledge ascribed to one of these

Defendants are properly imputed to the other. Defendants Volkswagen Group of America, Inc. and Volkswagen AG are referred to collectively herein as "Volkswagen."

## JURISDICTION AND VENUE

8.      The subject matter in controversy is within the jurisdictional limits of this court.

9.      This court has jurisdiction over the parties because parties are Texas residents.

10.     Venue in Harris County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

11.     On July 12, 2016, Mr. Fatery was operating a 2004 Ducati Monster 620 when he collided with another vehicle at the intersection of Long Rd. and Campbell Dr. After the collision occurred, the 2004 Ducati Monster 620's fuel tank began to leak gasoline and ignited. As a result of the fuel fire, Mr. Fatery suffered multiple, severe burns on the majority of his body and had to be rushed to the emergency room immediately after the collision, where he was admitted into the Intensive Care Unit of Memorial Hermann – Texas Medical Center and received multiple skin graphs and surgical procedures to his body. The injuries Ms. Fatery sustained were caused by the defective, unsafe, and dangerous design of the 2004 Ducati Monster 620's fuel tank.

12.     At all times relevant to this action, Defendant Volkswagen and/or its parents, affiliates and agents designed, manufactured, constructed, inspected, tested, marketed, distributed, and warranted the 2004 Ducati Monster 620. At all times relevant to this action, Defendant Ducati marketed, advertised, sold, and leased the 2004 Ducati Monster 620.

3

## STRICT LIABILITY – VOLKSWAGEN

13.     Plaintiff contends that the fuel system, including the gasoline tank and/or surrounding structures, of the 2004 Ducati Monster 620 was defective and that the defects were producing causes of the injuries to Plaintiff.

14.     Defendant Volkswagen engaged in the business of designing, manufacturing, constructing, inspecting, testing, marketing, selling, and distributing automobiles, including the 2004 Ducati Monster 620 and/or its components, for use on public highways.

15.     Defendant Volkswagen placed the 2004 Ducati Monster 620 on the market with knowledge that it would be used without inspection for defects and dangers. Defendant Volkswagen knew, or should have known, that ultimate users, operators, and consumers would not and could not properly inspect this product for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

16.     On July 12, 2016, the 2004 Ducati Monster 620, which was being used in a reasonably foreseeable manner, was substantially unchanged from its condition when sold and distributed by Defendants.

17.     The 2004 Ducati Monster 620 was defective and unreasonably dangerous to ultimate users, operators, or consumers, including Plaintiff, when sold and distributed by Defendants, in the following ways:

      A.     The 2004 Ducati Monster 620 was defectively designed, manufactured, and assembled in such a manner that it had an unreasonably dangerous propensity to ignite in or after foreseeable impacts;

      B.     The 2004 Ducati Monster 620 was defective in its design, manufacture, assembly, and warnings in that it increased (rather than decreased) the likelihood

and severity of injuries sustained by motorists in the event of a foreseeable impact;

C.     The 2004 Ducati Monster 620 was furnished without adequate warnings regarding its unreasonably dangerous propensity to ignite and catch fire in foreseeable impacts;

D.     The 2004 Ducati Monster 620 was defective and unreasonably dangerous because it failed to provide sufficient protection to motorists in accord with its advertised protection level;

E.     The 2004 Ducati Monster 620 failed to incorporate available and feasible alternative designs which would have significantly reduced the risk of fire without substantially impairing the utility of the 2004 Ducati Monster 620;

F.     The 2004 Ducati Monster 620 lacked sufficient warnings regarding the aforementioned defects and dangers;

G.     The 2004 Ducati Monster 620 was unreasonably dangerous in its design because the risk of danger to users outweighed its benefits; and

H.     The 2004 Ducati Monster 620 was unreasonably dangerous as it failed to meet design specifications as manufactured.

18.     At the time of the accident, the 2004 Ducati Monster 620 was in substantially the same condition as when sold and distributed by Defendants.

19.     At the time Volkswagen released the defective 2004 Ducati Monster 620 into the stream of commerce, non-defective vehicles were economically and technologically feasible which incorporated non-defective designs. Such designs could have prevented post-collision fuel-fed fires without substantially impairing the utility of the 2004 Ducati Monster 620.

5

20.     For the reasons set forth above, the 2004 Ducati Monster 620 was unreasonably dangerous to foreseeable users, including Plaintiff, and Defendant Volkswagen should be held strictly liable for the release and distribution of a defective product into the stream of commerce.

## NEGLIGENCE

21.     Plaintiff would also show that Defendant Volkswagen knew, or in the exercise of due care should have known, that the 2004 Ducati Monster 620 would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable risk of harm to users and persons who came into contact with it, including Plaintiff. Defendants were under a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, distribute, and sell the 2004 Ducati Monster 620 in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would come into contact with the 2004 Ducati Monster 620, including Plaintiff.

22.     Defendants breached the duty owed to Plaintiff by negligently designing, manufacturing, assembling, testing, distributing, failing to provide warnings for, and selling the 2004 Ducati Monster 620 when it was not in a reasonably safe condition for foreseeable use by:

A.     Failing to design, manufacture, assemble, test, inspect, distribute, and sell the 2004 Ducati Monster 620 so that it did not have an unreasonably dangerous propensity to ignite and catch fire when experiencing a foreseeable impact;

B.     Failing to design, manufacture, assemble, test, inspect, distribute, and sell the 2004 Ducati Monster 620 in such a manner so as to ensure it did not increase (rather than decrease) the likelihood and severity of injuries to motorists when experiencing foreseeable impacts;

C.      Failing to design, manufacture, assemble, test, inspect, distribute, and sell the 2004 Ducati Monster 620 in such a manner so as to provide reasonable protection to motorists in the event of a foreseeable impact in accordance with its advertised and intended purpose;

D.      Failing to warn customers or recall the 2004 Ducati Monster 620 once Defendants became aware of the design and manufacturing defects described above, before and after the sale of 2004 Ducati Monster 620;

E.      Negligently constructing the 2004 Ducati Monster 620;

F.      Negligently manufacturing the 2004 Ducati Monster 620;

G.      Negligently testing or failing to test the 2004 Ducati Monster 620;

H.      Negligently inspecting or failing to inspect the 2004 Ducati Monster 620;

I.      Negligently warning or failing to warn Plaintiffs of defects in the 2004 Ducati Monster 620 which Defendants either knew or should have known existed.

J.      Marketing, promoting, advertising, and representing that the 2004 Ducati Monster 620 was suitable for use on the highways and streets of America when, in fact, it was not; and

K.      Marketing, promoting, advertising, and representing that the 2004 Ducati Monster 620 was a safe product when, in fact, Defendants knew that it was not because the fuel system would cause the vehicle to ignite during a normal and foreseeable impact.

## CAUSATION AND PROXIMATE CAUSE

23.     The negligence described above directly and proximately caused Plaintiff's

injuries.

## STRICT LIABILITY AGAINST DUCATI

24.     Section 402A of the Restatement (Second) of Torts governs claims for strict

liability in tort. Firestone Steel Prods. Co. v Barajas, 927 S.W.2d 608, 613 (Tex. 1996). Section

402A provides: 1. one who sells any product in a defective condition unreasonably dangerous to

the user or consumer or to his property is subject to liability for physical harm thereby caused to

the ultimate user or consumer, or to his property if (a) the seller is engaged in the business of

selling such a product, and (b) it is expected to and does reach the user or consumer without

substantial change in the condition in which it is sold. Restatement (Second) of Torts 402A

(1965).

25.     Ducati is a seller of a product for purposes of Section 402A. Specifically, it sold

the 2004 Ducati Monster 620 in a defective condition unreasonably dangerous to the user or

consumer or to his property. Therefore, Ducati is subject to liability for the physical harm

thereby caused to the ultimate user or consumer, Plaintiff, as Ducati is engaged in the business of

selling such a product. The 2004 Ducati Monster 620 was expected to and did reach the

consumers without substantial change in the condition in which it was sold by Ducati.

26.     Ducati inspected, advertised, marketed, distributed, and sold the 2004 Ducati

Monster 620 and placed it into the stream of commerce knowing that the 2004 Ducati Monster

620 would be used in its intended manner. Ducati placed the the 2004 Ducati Monster 620 on the

market with knowledge that it would be used without inspection for defects and dangers. Ducati

knew, or should have known, that ultimate users, operators, and consumers would not and could

not properly inspect this product for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

27.     On July 12, 2016, the 2004 Ducati Monster 620, which was being used in a reasonably foreseeable manner, was substantially unchanged from its condition when sold and distributed by Ducati in all relevant respects.

28.     The 2004 Ducati Monster 620 was defective and unreasonably dangerous to ultimate users, drivers, or consumers, including Plaintiff, when sold and distributed by Ducati in the following ways:

    A.     The 2004 Ducati Monster 620 failed to perform as safely as an ordinary consumer would have expected;

    B.     The 2004 Ducati Monster 620 was improperly designed, manufactured, distributed, and sold in such a manner that it had an unreasonably dangerous propensity to ignite and catch fire following foreseeable impacts;

    C.     The 2004 Ducati Monster 620 failed to conform with its manufacturing specifications;

    D.     The risks inherent in the 2004 Ducati Monster 620's design outweighed the benefits of that design;

    E.     The 2004 Ducati Monster 620 failed to incorporate available and feasible alternative designs which would have significantly reduced the risk of fie without substantially impairing the utility of the 2004 Ducati Monster 620; and

    F.     The 2004 Ducati Monster 620 lacked sufficient warnings regarding the aforementioned defects and dangers;

29.     Ducati actually knew, or in the exercise of ordinary care should have known, at

the time the 2004 Ducati Monster 620 was distributed and sold that the product it was supplying was defective. Plaintiff's harm resulted from that defect.

30.     For the reasons set forth above, the 2004 Ducati Monster 620 was unreasonably dangerous to foreseeable users, including Plaintiff, who used the 2004 Ducati Monster 620 in an ordinary and foreseeable manner.

31.     As a direct and proximate result of the foregoing defects, Plaintiff sustained injuries.

## NEGLIGENCE AGAINST DUCATI

32.     Ducati knew, or in the exercise of due care should have known, that the 2004 Ducati Monster 620 would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable risk of harm to users and persons who came into contact with it, including Plaintiff. Ducati was under a duty to properly and adequately inspect, service, distribute, and sell the 2004 Ducati Monster 620 in a reasonably safe condition so as not to present a danger to users of the 2004 Ducati Monster 620, including Plaintiff.

33.     Ducati failed to exercise ordinary care and breached its duty by, among other things:

        A.     Negligently inspecting or failing to inspect the 2004 Ducati Monster 620 for defects;

        B.     Negligently servicing the 2004 Ducati Monster 620;

        C.     Negligently warning or failing to warn Plaintiff of defects in the 2004 Ducati Monster 620 that Ducati either knew or should have known existed;

        D.     Marketing, promoting, advertising, and representing that the 2004 Ducati Monster 620 was suitable for use on the highways and streets of America when in

10

fact, it was not;

E.     Marketing, promoting, advertising, and representing that the 2004 Ducati Monster 620 was a safe product when, in fact, Ducati knew or should have known that it was not because the fuel system would cause the vehicle to ignite during or after a normal and foreseeable impact;

34.     The negligence described above directly and proximately caused Plaintiff's injuries.

35.     As a direct and proximate result of Ducati's actions, Plaintiff sustained injuries.

## BREACH OF WARRANTY

36.     Defendants Volkswagen and Ducati designed, manufactured, supplied, tested, marketed, and distributed into the stream of commerce the 2004 Ducati Monster 620.

37.     Volkswagen knew that use for which the 2004 Ducati Monster 620 was intended and impliedly warranted the 2004 Ducati Monster 620 to be of merchantable quality and safe for such use.

38.     Defendants expressly and impliedly warranted that the 2004 Ducati Monster 620 was fit for the purpose for which it was intended. Plaintiffs made use of the product as alleged herein and relied on the express and implied warranties. However, the 2004 Ducati Monster 620 was not fit for its intended use, rendering it unreasonably dangerous.

39.     Defendants reasonably relied upon the skill and judgment of Defendants as to whether the 2004 Ducati Monster 620 was of merchantable quality and safe for its intended use.

40.     Defendants breached the express and implied warranties by the failure of the 2004 Ducati Monster 620's fuel system as described in this Petition and the corresponding failure of Defendants to warn and instruct consumers about the known dangerous defects of the 2004

Ducati Monster 620.

41.     As a direct and proximate result of Defendants' breach of implied warranties regarding the safety of the 2004 Ducati Monster 620, Plaintiff has suffered significant injuries.

## GROSS NEGLIGENCE/EXEMPLARY DAMAGES FOR PLAINTIFF

42.     The unreasonably dangerous nature of the 2004 Ducati Monster 620's defects as outlined herein created a high probability that the 2004 Ducati Monster 620 would: a. fail to be crashworthy in a foreseeable impact; b. subsequently ignite and burst into flames during foreseeable use; and c. cause severe and permanent personal injuries to Plaintiff.

43.     Defendants knew, or in the exercise of reasonable care should have known, of the defects which led to the unnecessary injuries to Plaintiff, and they recognized or should have recognized the extreme risk to persons such as Plaintiff  that were presented by their acts and omissions in regard to the defective 2004 Ducati Monster 620, and these were grossly negligent and malicious acts.

44.     When viewed objectively form the standpoint of Defendants and considering the probability and magnitude of potential harm to others, the acts or omissions of Defendants involved an extreme degree of risk, and Defendants had actual, subjective awareness of the risks involved but nevertheless proceeded in conscious disregard to the rights, safety, or welfare of others.

45.     The conduct of Defendants in designing, marketing, manufacturing, and/or placing the 2004 Ducati Monster 620 into the stream of commerce in a defective and unreasonably dangerous condition was undertaken willfully, wantonly, and with conscious disregard for the consequences, thus constituting grounds for punitive damages for gross negligence and malice.

46.     For this gross negligence and malicious conduct, Plaintiff requests exemplary damages in an amount sufficient to punish Defendants consistent with their net worths and in an amount that a finder of fact, in its discretion, awards in excess of minimal jurisdictional limits of the Court.

## ECONOMIC DAMAGES FOR MATIN FATERY

47.     As a direct and proximate result of the conduct of Defendants, Plaintiff MATIN FATERY sustained damages as follows:

A.    The physical pain and mental anguish in the past and future;

B.    The reasonable and necessary costs for medical care and treatment, including doctors, hospitals, nurses, medicines, and other services and supplies in the past and future;

C.    Physical impairment in the past and future;

D.    The physical pain and suffering in the past and future;

E.    Physical disfigurement in the past and future; and

F.    Lost earning capacity.

## ATTORNEY'S FEES

48.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by statute and/or common law.

## CONDITIONS PRECEDENT

49.     All conditions precedent to Plaintiff's claim for relief have been performed or

have occurred.

## REQUEST FOR DISCLOSURES

50.     Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Defendants are hereby requested to disclose the information and/or material described in Rule 194.2(a)-(l). Defendants' responses shall be delivered to Plaintiff within FIFTY (50) days from the date of service hereof.  Plaintiff further holds these Requests as continuing in nature and requests that Defendants supplement any and all responses to these Requests for Disclosure as provided by TEX. R. CIV. P. 192, 193, and 194.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for the actual and exemplary damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or not.

Respectfully submitted,

**THE HADI LAW FIRM**

By: _____
Husein Hadi
Texas Bar No. 24067641
Jamil Thomas
Texas Bar No. 24066914
Carnegie H. Mims, III
Texas Bar No. 24046448
7100 Regency Square Boulevard, Suite 140

14

Houston, Texas 77036
Tel:  (832) 433-7977
Fax:  (855) 423-4529
litigation@thehadilawfirm.com

**Of Counsel:**

**Paul A. Higdon**
**SBN:09590700**
**601 Sawyer, Suite 210**
**Houston, TX 77004**
**Tel: 713-223-7300**
**Fax: 713-223-7331**

**ATTORNEYS FOR PLAINTIFF**
**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**
**FILED ON: December 27, 2016**

15